UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

                                                                               **ORDER**

        v.                                                      19-CR-193 (WFK)

ELIJAH WELLS,

              Defendant.
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:** On February 14, 2020, Elijah Wells ("Defendant") pled guilty to the sole count of a Superseding Information charging him with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Elijah Wells is hereby sentenced to 30 months of incarceration, 2 years of supervised release, and a $100.00 special assessment.

## BACKGROUND

On February 14, 2020, Defendant pled guilty to the sole count of a Superseding Information charging him with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

### I.    Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing a sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. §

1

3553(c)(2).  The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form[.]"  *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)."  *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.).  Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant.  The Court addresses each in turn.

## II.    Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant."  18 U.S.C. § 3553(a)(1).  Proceeding chronologically, the Court addresses first the history and characteristics of Defendant and then the nature and circumstances of the offense.

i.      History and Characteristics of the Defendant

Defendant, now 25 years old, was born on February 29, 1996 in Brooklyn, New York.  Presentence Investigation Report ("PSR") ¶ 35, ECF No. 45.  Defendant is single and without children.  *Id.* ¶ 42.  His father resides in Brooklyn and is a director of security.  *Id.*  Defendant's mother resides in public assistance housing in the Gowanus neighborhood of Brooklyn and is a home health aide and tenant patrol member of her housing development.  *Id.*  Defendant's parents divorced when Defendant was four-years old and have both since remarried.  *Id.*  Both parents talk regularly with Defendant, are aware of his conviction, and remain supportive of him.  *Id.*

Defendant is the youngest of three sons to the marital union of his parents; he also has five half-siblings between his parents. *Id.* ¶ 38. Defendant's two older brothers live in Harlem and Brooklyn respectively, are aware of Defendants' conviction and remain supportive of him. *Id.* Defendant's half siblings also reside in Brooklyn and are aware of Defendant's conviction and remain supportive of him. *Id.* ¶ 39.

Defendant had a strained upbringing. *Id.* ¶ 40. He was reared in a tight, two-bedroom apartment in the Gowanus Houses with his maternal grandmother, his mother, and three brothers. *Id.* Defendant would see his father on weekends, and his father would take him and his brothers to school. *Id.* Defendant recalled, in an interview with the United States Probation Department, that the heat often did not work in the family unit. *Id.* Defendant's mother suffered from substance abuse. *Id.* ¶ 41. When his mother would abuse crack cocaine, she would be out of the home for weeks at a time, and Defendant's grandmother would care for Defendant and his brothers. *Id.* When Defendant was thirteen, his mother was arrested and incarcerated for eight months. *Id.* Defendant's mother has since "turned her life around." *Id.*

Defendant's highest achieved academic level is eleventh grade. *Id.* ¶ 52. He attended Sheepshead Bay High School in Brooklyn, New York, through approximately 2014, before dropping out. Addendum to the PSR ("PSR Add."), ECF No. 54 at 2. Defendant attained his ten-hour Occupational Safety and Health Administration (OSHA) certification in either 2013 or 2014 at a location in Brooklyn, New York. PSR ¶ 54.

Prior to his incarceration, Defendant worked as a laborer in demolition and construction, briefly as a dishwasher, and was otherwise unemployed and supported by his family. PSR ¶¶ 58–61. Defendant reported generating some income during periods of unemployment by helping

3

people he knew move out of their homes or by helping his father shred papers at his job. *Id.* ¶ 59.

A review of Defendant's criminal history reveals a five-year span of interaction with the criminal justice system and law enforcement, including four arrests, three criminal court convictions, and one acquittal. *Id.* ¶¶ 23–33. Throughout these arrest cycles, Defendant was flagged as a member of the Oww Oww, a subset of the Bloods gang in the Gowanus section of Brooklyn, New York. *Id.* ¶¶ 26–32. At age 19, Defendant was arrested twice within less than two months' time, one for which he was convicted, and the other for which he was acquitted. *Id.* ¶¶ 24, 31, 32. His conviction for misdemeanor Assault in the Third Degree included the conduct of punching, kicking, and stabbing a victim in the company of five others; he received a one-year custodial sentence for that matter. *Id.* ¶ 24. His acquittal, pertained to a gang-related, five-victim shooting in Red Hook, Brooklyn. *Id.* ¶ 32. At age 21, Defendant sustained two more convictions; his first was for a felony count of Attempted Assault in the Second Degree, and his second was for two counts–Criminal Possession of a Weapon in the Third Degree, a felony, and Resisting Arrest, a misdemeanor. *Id.* ¶¶ 25, 26. The former yielded a one-year custodial sentence for conduct committed by Defendant while incarcerated in Rikers Island Correctional Facility; he punched a correctional officer in the face multiple times before slamming him to the ground. *Id.* ¶ 25. The latter two-count conviction resulted in one-year custodial sentences on each count for conduct that entailed possessing a semiautomatic .9-millimeter pistol and having to be forcibly arrested by police. *Id.* ¶26.

Defendant is asthmatic and uses an inhaler only after physical activity which renders him unable to control his breathing. *Id* ¶ 45. In 2011, Defendant was stabbed as a result of a one-on-one fight after school. *Id.* ¶ 46. As a result of his stabbing, Defendant reported that part of his

4

liver died and a lung collapsed, and he was hospitalized for nearly two to three months at New York University Langone Hospital, formerly named NYU Lutheran Medical Center, in the Bay Ridge section of Brooklyn, New York. *Id.* Defendant has a scar horizontally lined across his right rib cage from the surgery related to his stabbing. *Id.* Otherwise, Defendant enjoys sound physical health. *Id.*

Defendant stated to probation that he sometimes feels sad or angry, and a doctor involved in his MDC Brooklyn non-residential drug counseling program once told Defendant he may be suffering from Post-Traumatic Stress Disorder (PTSD), although he was not formally diagnosed with the disorder. *Id.* ¶ 48.

Defendant has a substance abuse history involving alcohol and marijuana, though he reported that his marijuana consumption has slowed. *Id.* ¶ 51.

ii. The Nature and Circumstances of the Offense

On March 30, 2019, as three NYPD officers were on patrol in Brooklyn, New York, they observed a vehicle which emanated smoke and the odor of marijuana; the vehicle was occupied by Defendant. PSR ¶ 4. The officers approached the vehicle and asked Defendant to step out from the vehicle. One of the officers conducted a pat down of Defendant, and as a result of the pat down, a loaded .22 caliber Rossi USA firearm was recovered from his right-front pants pocket and Defendant was arrested. *Id.* ¶¶ 5–7. A subsequent review of Defendant's criminal history records revealed that he had sustained a prior felony conviction. *Id.* ¶ 8. These convictions resulted in Defendant's case being referred for federal prosecution. *Id.* Defendant has been in custody since March 30, 2019. *Id.* ¶ 57. Defendant was held in the Rikers Island Correctional Facility in Bronx, New York, before being arrested by federal authorities on April 8, 2019. *Id.*

Defendant has completed thirty-three hours of educational training and incurred one disciplinary incident[1] at the Metropolitan Detention Center ("MDC"). PSR Add. at 1.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence punishes Defendant for violating federal law and is crafted to deter him and others from engaging in similar criminal activity in the future. More generally, the Court's sentence sends a message that a life of crime carries a risk of punishment that outweighs any potential gains.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to the sole count of a Superseding Information charging him with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Defendant faces a maximum term of imprisonment of 10 years. *See* 18 U.S.C. § 922(g)(1)(a)

---

[1] On September 20, 2020, Defendant was cited for Possessing a Dangerous Weapon, to which he initially remarked that the weapon was not his. PSR Add. at 1. According to a copy of the BOP incident report, on September 20, 2020, while conducting "bar taps" in the defendant's single-user cell, a correctional officer found a homemade weapon between Defendant's mattress and metal bed frame. *Id.* The homemade weapon measured eight inches in length and had white rope wrapped around one side. *Id.* Later that day, the defendant was read the body of the incident report, claimed it was written truly, and stated "no comment." *Id.* At a disciplinary hearing held on October 8, 2020, he was found guilty of committing the infraction. *Id.* In turn, he was punished to a 41-day loss of good conduct time, 30 days disciplinary segregation (suspended pending 180 days of clear conduct), and a 180-day loss of phone privileges from October 8, 2020 through April 5, 2021. *Id.*

and 924(a)(2). Defendant also faces a maximum term of supervised release of three years, *id*. § 3583(b)(2); a maximum fine of $250,000.00, *id*. § 3571(b); and a special assessment of $100.00, *id*. § 3013. Defendant is statutorily eligible for between one and five years probation. *Id*. § 3561(c)(1).

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A). The parties agree on the applicable Guidelines range calculation applicable to Defendant.

The sole count of the Superseding Information charges Defendant with being a Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The applicable Guideline for a violation of 18 U.S.C. §§ 922(g)(1) provides a base offense level of 20 if the defendant committed the offense subsequent to sustaining one felony conviction for a crime of violence. USSG § 2K2.1(a)(4)(A). Because Defendant has a prior felony conviction for Attempted Assault in the Second Degree, a crime of violence, as defined in USSG 4A1.2, the parties agree his adjusted offense level is 20. Because the Defendant demonstrated acceptance of responsibility in a timely manner, a reduction of three levels is appropriate. USSG §§ 3E1.1(A), (B). Accordingly, Defendant's total adjusted offense level is 17. All parties agree with this calculation.

Defendant's total criminal history score is six, which results in a criminal history category of III. USSG Ch. 5, Part A. Given a total offense level of 17 and a criminal history category of III, the Guidelines suggest a term of imprisonment of 30 to 37 months. USSG Ch. 5, Part A.

Probation recommends a sentence of 35 months of incarceration followed by 2 years of supervised release with special conditions. The Government recommends a guidelines sentence of 30 to 37 months of imprisonment. Defendant recommends a sentence of time served, which defense counsel argues is within the guidelines range because Defendant has served 30 months when good time credit is taken into account.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor, requiring the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), is not pertinent to Defendant's sentencing.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). For the reasons stated in this memorandum and order, and in consideration of the other six § 3553(a) factors, the Court's sentence sufficiently avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Lastly, the seventh § 3553(a) factor, requiring the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7), is not applicable in Defendant's case, see *id.* § 3663.

## CONCLUSION

A sentence of 30 months of incarceration, to be followed by 2 years of supervised release (with special conditions), and a $100.00 special assessment per count is appropriate and

comports with the dictates of § 3553.  This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report, and all addendum barring any errors contained therein.

**SO ORDERED.**

_____s/ WFK_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: June 11, 2021
      Brooklyn, New York